STATE *v.* HARRY BOYD.

November Term, 1916.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed January 9, 1917.

*Breach of the Peace—Construction of Statute—"Tumultuous and Offensive Carriage"—Reckless Operation of Automobile.*

P. S. 5870, providing for the punishment of one who "disturbs or breaks the public peace by tumultuous and offensive carriage, by threatening, quarreling, challenging, assaulting, beating or striking another person," is not a definition of the crime known as breach of the peace, but of certain modes of committing that offense.

In construing the language of a legislative enactment the purpose of the provision is to be considered.

The phrase "tumultuous and offensive carriage," employed in P. S. 5870, was intended by the Legislature to cover a class of disturbances differing in character from those afterwards enumerated in the statute, and was used with reference to the tranquility, sense of security, and freedom from bodily harm, which the State guarantees to its citizens; and may properly be given a reasonable construction in restraint of conduct which would deprive the citizen of this protection.

A complaint alleging that the respondent disturbed and broke the public peace by tumultuous and offensive carriage, in that he ran an automobile upon a public highway at a high rate of speed and in a dangerous, reckless and riotous manner, and in a manner to imperil the safety, peace and security of persons then using the highway, and put them in great fear of bodily harm, *held*, on motion in arrest of judgment, sufficiently to charge a breach of the peace by tumultuous and offensive carriage, within the meaning of P. S. 5870.

COMPLAINT charging respondent with breach of the peace. Trial by jury in the Brattleboro Municipal Court, *Frank E. Barber*, Judge. Verdict guilty. Respondent moved in arrest of

judgment. Motion overruled. Respondent excepted. The opinion states the case.

*Chase & Chase* for the respondent.

*O. B. Hughes,* State's Attorney, for the State.

MUNSON, C. J. The complaint on which the respondent has been convicted charges that he did disturb and break the public peace by tumultuous and offensive carriage, in that he ran an automobile upon the public highway at a high rate of speed and in a dangerous, reckless and riotous manner, and in a manner to imperil the safety, peace and security of persons then using the highway, and ran into persons then lawfully using the highway and put them in great fear of bodily harm, and by assaulting one Nelson Derby and other persons, in that he ran said automobile at such a high rate of speed and in such a dangerous and reckless manner as to injure said Derby and other persons. The respondent seasonably moved in arrest of judgment. The only question argued is as to the sufficiency of the complaint.

The complaint is founded on P. S. 5870, which provides for the punishment of one who "disturbs or breaks the public peace by tumultuous and offensive carriage, by threatening, quarreling, challenging, assaulting, ·beating or striking another person." This section is not a definition of the crime known as breach of the peace. *State* v. *Matthews,* 42 Vt. 542. But it is a statute defining certain modes of committing that offense. *State* v. *Riggs,* 22 Vt. 321.

It is claimed that the respondent's conduct as alleged does not constitute tumultuous and offensive carriage within the meaning of the statute; and we are referred to the definitions given these words by lexicographers. But in construing the language of a legislative enactment the purpose of the provision is to be considered. The Legislature has used these words with reference to the tranquility, sense of security, and freedom from bodily harm, which the State guarantees to its citizens; and they may properly be given a reasonable construction in restraint of conduct which would deprive the citizen of this protection.

But it is argued that the Legislature must have intended a construction which would limit the words to acts of the same general nature as those covered by the other terms embraced in

the statute, and that this precludes the construction claimed by the State. It is true that the other terms will ordinarily apply to direct personal violence threatened or committed against some particular person or persons. But we think the rule invoked by the respondent has no application here, and that the phrase in question was intended to cover a class of disturbances differing in character from those afterwards enumerated. This view as to the intended scope of the phrase is justified by a great number of authorities, including some of our own cases.

In giving the phrase "tumultuous and offensive carriage" as used in our statute a sufficiently broad construction to cover the charge brought against this respondent, we are including nothing which the common law does not recognize as an indictable offense.

In *United States* v. *Hart,* Pet. C. C. R. 390, Fed. Cas. No. 15, 316, decided in the United States Circuit Court in 1817, and still frequently cited the defendant, a constable of the City of Philadelphia, was indicted for retarding the passage of the mail, and justified under a city ordinance on the ground that the stage was going at such an immoderate rate as to endanger the lives and safety of the citizens. The court held that the Federal statute did not prevent an arrest for breaking the peace, and that "driving a carriage through a crowded or populous street, at such a rate or in such a manner as to endanger the safety of the inhabitants," was an indictable offense at common law, and amounted to a breach of the peace.

As the complaint sufficiently charges a breach of the peace by tumultuous and offensive carriage, it is not necessary to consider that ground of the motion in arrest which relates to the words charging a breach of the peace by an assault.

*Judgment that there is no error and that the respondent take nothing by his exceptions.*