425 A.2d 752

COMMONWEALTH of Pennsylvania, Appellant

v.

Robert E. HOLDERMAN.

Superior Court of Pennsylvania.

Argued Dec. 3, 1979.

Filed Jan. 30, 1981.

Petition for Allowance of Appeal Denied May 18, 1981.

162

Lee G. Nollau, Assistant District Attorney, Bellefonte, for Commonwealth.

Daniel McGee, Assistant Public Defender, Bellefonte, submitted a brief on behalf of appellee.

Before SPAETH, CAVANAUGH and O'KICKI, JJ.*

CAVANAUGH, Judge:

The sole issue presented in this appeal is whether a state university campus police officer may make a warrantless arrest outside the boundaries of the campus while in fresh pursuit of a summary offender.

In the early morning hours of August 20, 1978, police officers of the Police Services of the Department of University Safety of the Pennsylvania State University observed appellee make an improper left turn, in violation of 75 Pa.C.S. § 3331, from Shortlidge Road, which is situated within the Pennsylvania State University campus, onto to Park Avenue, which is located outside the campus in the Borough of State College. The officers pursued appellee through the intersection and stopped his vehicle on Park Avenue. Based on observations of appellee made following the stop, the officers arrested appellee for driving under the influence of alcohol, 75 Pa.C.S. § 3731, as well as for making an improper turn, 75 Pa.C.S. § 3331.

▮ Prior to trial, appellee challenged the legality of his arrest on the ground that the campus police officer lacked the authority to make an arrest off campus, but his motion was refused. On December 12, 1978, a jury found appellee guilty of both charges. Appellee again raised the issue of the validity of his arrest in post-trial motions for a new trial and in arrest of judgment, but the trial court, after oral argument, denied these motions. The trial court, however, reconsidered its order and, in a written opinion, declared that the campus officer had no authority to make an arrest

* Joseph F. O'Kicki of the Court of Common Pleas of Cambria County, Pennsylvania, is sitting by designation.

outside the boundaries of the campus and granted appellee's motion for a new trial. The Commonwealth has appealed.[1]

█ Campus police agencies of state-aided colleges and universities were created by The Administrative Code of 1929, Act of April 9, P.L. 177, No. 175, Art. XXIV, § 2416, 71 P.S. § 646, as amended by the Act of July 7, 1968, P.L. 297, No. 149, § 1, 71 P.S. § 646. This statute empowers campus police to enforce good order on the grounds and in the buildings of the campus, to protect property of the Commonwealth and to expel disorderly persons and trespassers. In the performance of their duty, campus police are empowered to arrest any person who damages campus property or commits any offense on campus. In addition, they must complete a training program approved by the Department of Education.

Of particular interest in subsection (e) which authorizes the campus police "[t]o exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the . . . municipalities wherein said colleges, universities and community colleges are located . . . ."

Included among the powers of the police of the Borough of State College is the authority to make an extraterritorial arrest when in fresh pursuit of a summary offender. This authority is derived from the intrastate hot pursuit statute, 42 Pa.C.S. § 8901,[2] which provides as follows:

Any police officer of any political subdivision may arrest with or without warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after commission of the offense. The police

1. The Commonwealth may appeal an order granting a motion for a new trial where the question involved is, as here, purely one of law. *Commonwealth v. Liddick*, 471 Pa. 523, 525, n.1 370 A.2d 729, 730 n.1 (1977).

2. 42 Pa.C.S. § 8901 substantially re-enacts the Act of November 2, 1973, P.L. 330, No. 109, § 1, 19 P.S. § 11.

officer shall exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision.

The Commonwealth argues that, by virtue of subsection (e) of 71 P.S. § 646 and 42 Pa.C.S. § 8901, the university police are similarly empowered to make extraterritorial arrests when in fresh pursuit of offenders.

Appellee contends that, while a campus police officer may have the same authority as a borough police officer, this authority is circumscribed by the final paragraph of 71 P.S. § 646:

> Security and Campus Police shall exercise their powers and perform their duties only on the premises of the State colleges and universities State aided or related colleges and universities and community colleges by or for which they are employed...

This section, appellee argues, controls subsection (e) and precludes campus police from making extraterritorial arrests under any circumstances. Appellee further asserts that 42 Pa.C.S. § 8901 applies only to police of political subdivisions and that since state universities are not political subdivisions, 1 Pa.C.S. § 1991, campus police are excluded from the statute.

In construing a statute, our goal is to determine and effectuate the intention of the legislature. In so doing, we must give effect, if possible, to all its provisions. 1 Pa.C.S. § 1921(a). Where, as here, the statutory definition is not explicit, we may consider such factors as the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the consequences of a particular interpretation and the contemporary legislative history. 1 Pa.C.S. § 1921(c); *Higher Education Assistance Agency v. Abington Memorial Hospital,* 478 Pa. 514, 387 A.2d 440 (1978).

The scant legislative history attendant to the passage of 71 P.S. § 646 indicates that the statute was promulgated to provide effective police protection of property and persons located within the campus as well as to relieve the surround-

ing municipality or city of the burden of supplying this service. An impetus for enactment of this statute was the political unrest endemic on college campuses during the late nineteen-sixties. *See Legislative Journal*—Senate at 333 (June 3, 1968).

The territorial limitation in the last paragraph of § 646 is analogous to statutory restrictions that prescribe the general scope of police officers' authority to the bounds of their jurisdiction. E.g.: The Third Class City Code, Act of June 23, 1931, P.L. 932, No. 317, Art. XX, § 2005, 53 P.S. § 37005; The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, No. 581, § 1121, 53 P.S. § 46121. As such, the provision can be read as a necessary delimitation of the extent of campus police territorial jurisdiction for the performance of routine police functions. Since the educational facility is always part of some political subdivisions of the Commonwealth, it was necessary to define the territorial jurisdiction of campus police. As previously noted, police officers in Pennsylvania are empowered to make warrantless arrests of summary offenders outside the perimeter of their jurisdiction when in fresh pursuit. 42 Pa.C.S. § 8901. *See Commonwealth v. Robb*, 238 Pa.Super. 62, 352 A.2d 515 (1975). By virtue of subsection (e) of 71 P.S. § 646, the General Assembly has given campus police officers the same powers as those possessed by their municipal counterparts. By a fair reading of the statute, this grant of powers appears to encompass the power to make extraterritorial arrests. Consequently, campus police officers, in this rare instance, may pursue and arrest a summary offender fleeing campus.

Our conclusion that the legislature did not intend to foreclose campus police officers from pursuing and arresting summary offenders off campus is bolstered by the circumstances surrounding the amendment of the intrastate hot pursuit statute. Prior to 1973, municipal police officers were authorized to make extraterritorial arrests only when in fresh pursuit of a felon. In response to our decision in *Commonwealth v. Troutman*, 223 Pa.Super. 509, 302 A.2d 430 (1973), the legislature amended the statute to permit

extraterritorial arrests of summary offenders. *See* Act of November 2, 1973, P.L. 330, No. 109, § 1, 19 P.S. § 11. This amendment was an attempt to reduce traffic accidents by enabling local police authorities to pursue and arrest intoxicated drivers who cross municipal boundaries. *Commonwealth v. Robb, supra. See also Commonwealth v. Troutman, supra.* We cannot say that the problem of drinking drivers is any less acute on college campuses. In light of this rationale, we can perceive of no reason why the General Assembly would bestow upon municipal police officers the right to make extraterritorial arrests of drunk drivers or those engaged in summary traffic violations, yet deny this right to campus police officers. To interpret 71 P.S. § 646 as appellee urges would exacerbate the harm recognized by the court in *Commonwealth v. Troutman, supra.*

■ Moreover, 71 P.S. § 646, like 42 Pa.C.S. § 8901, is not a penal statute and therefore must be liberally construed to effect its object and to promote justice. 1 Pa.C.S. § 1928. *See Commonwealth v. Fiume,* 278 Pa.Super. 75, 419 A.2d 1364 (1980); *Commonwealth v. Robb, supra.* A campus police force is a valuable resource of not only the college or university it serves but the surrounding municipality as well. In order for a campus police agency to adequately protect the campus and its residents and to act as an effective adjunct to the local police force, its officers must be permitted to pursue and arrest persons who commit summary offenses on campus and attempt to escape into the adjoining municipality.[3] We conclude, therefore, that the state legislature intends that campus police have all the powers possessed by their local counterparts including the right to make warrantless arrests when in fresh pursuit of summary offenders.

**3.** *Commonwealth v. Bable,* 245 Pa.Super. 72, 385 A.2d 530 (1978), cited by the dissent, is inapposite to the present situation. There, the hot pursuit rule was not applied because both the offense and the hot pursuit occurred in a jurisdiction where the officer had no authority to act. In the instant case the offense occurred within the jurisdiction of the campus officers.

■ Consequently, because appellee's arrest was lawful, we reverse the lower court's order granting a new trial. The verdict of the jury is reinstated and the case is remanded for sentencing.

O'KICKI, J., files a dissenting opinion.

O'KICKI, Judge, dissenting:

The Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 8701 is inapplicable to the case at bar. 42 Pa.C.S.A. § 8901 states:

Any police officer of any *political subdivision* may arrest with or without warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after commission of the offense. The police shall exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision. (emphasis added).

"Political subdivision" as defined by 1 Pa.C.S.A. § 1991 encompasses:

"Any county, city, borough, incorporated town, township, school district, vocational school district and county institution district."

The legislature has specifically set forth the types of "schools" which are to be considered as political subdivisions. College and University campuses are not included under 1 Pa.C.S.A. § 1991. Therefore, campus police have no authority to act under 42 Pa.C.S.A. § 8901. 1 Pa.C.S.A. § 1921(b) states:

"When the wording of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded..."

Next we must consider whether the last paragraph of 71 P.S. § 646 and subsection (e) of 71 P.S. § 646 conflict. The last paragraph of 71 P.S. § 646 states:

"Security and campus police shall exercise their powers and perform their duties *only* on the premises of the State Colleges and universities. . ." (emphasis added).

71 P.S. § 646 states:

". . . Campus Police of all State colleges and universities, State aided or related colleges and universities and community colleges shall have the power, and their duty shall be:

(e) *To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance* by the police of the cities of . . . wherein state buildings are located and in municipalities wherein said colleges, universities and community colleges are located". (emphasis added).

In *Commonwealth v. Bable,* 254 Pa.Super. 72, 385 A.2d 530 (1978) the court held that the arrest of the defendant and his co-defendant was unlawful because he had no authority to arrest anyone in Hempfield Township. The court stated:

"Thus, the arrest of the defendant was unlawful as Hempfield and Greenville did not have any *municipal agreements* allowing police officers of one municipality to arrest in the other. The police departments of each municipality had a tacit agreement to that effect. However, such an agreement made between police departments does not confer authority to make such arrests because *only the municipalities* may enter into such agreements." Supra 254 Pa.Super. at 75–76, 385 A.2d 530.

71 P.S. § 646(e) and the last paragraph are not in conflict. If the Pennsylvania State University and the Borough of State College would have had an "agreement" "To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance", (see 71 P.S. § 646(e)), then the last paragraph of 71 P.S. § 646 would not limit campus police to act "only" on the premises of the campus.

Under 1 Pa.C.S.A. § 1933,

"Whenever a general provision is a statute shall be in conflict with a special provision in the same *or another*

*statute,* the two shall be construed, if possible, so that effect may be given both . . . "

The specific provision of 71 P.S. § 646(e) controls the general provision of the last paragraph of 71 P.S. § 646. If the University and Borough would have had an ordinance permitting campus police to exercise their power of arrest within the Borough of State College defendant's arrest would have been lawful. However, the record is void of any such agreements, thus, the order of February 22, 1979, Court of Common Pleas of Centre County should be affirmed and the case remanded for new trial.